IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| WAZIR SHABAZZ, | ) | CASE NO. 7:13CV00300 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | |
| DAVE ROBINSON, ET AL., | ) | By: Michael F. Urbanski |
| | ) | United States District Judge |
| Defendant(s). | ) | |

Wazir Shabazz, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, the Constitution, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), alleging that the Virginia Department of Corrections ("VDOC") grooming policy violates his right to free exercise of his Muslim religious belief that he should not cut his beard. He also asserts an equal protection claim, because some inmates at another prison can grow their beards and retain privileges. Defendants have filed a motion to dismiss, and Shabazz has responded, making the matter ripe for disposition. Upon review of the record, the court finds that the motion to dismiss must be granted.

I

Shabazz's statement of facts is brief. Shabazz is incarcerated at Keen Mountain Correctional Center ("KMCC"), where he is assigned to the general population area. He alleges that the grooming policy forbids him from growing his beard longer than one-quarter inch as the "Shari'ah laws of Islam" dictate for him as a Muslim. (Compl. 2.) In fact, under the challenged VDOC grooming policy, Operating Procedure ("OP") 864.1, Shabazz may grow his beard, uncut in keeping with his religious beliefs, but he may do so only in a segregation housing area, with

more restricted privileges and out-of-cell activities than general population inmates enjoy.[1] If Shabazz wishes to remain in the general population, he may grow a beard, but will be charged with a disciplinary infraction if he fails to keep it trimmed to one-quarter-inch in length.

Shabazz points to a designated pod at Wallens Ridge State Prison (known as the Graduated Privilege Program or GPP) where inmates are allowed to grow their beards and hair as long as they wish, while allegedly enjoying the same privileges as inmates in the general population.[2] Inmates in this pod must, however, agree to be "quarantine[d]" to this Wallens Ridge pod in order to grow their hair. Shabazz states that he is not willing to be quarantined in this manner in order to exercise his religious beliefs on hair and beard growth.

Shabazz sues Dave Robinson, VDOC Operations Director, and L. Fleming, the warden of Keen Mountain, seeking monetary damages and injunctive relief ordering the abolishment of the grooming policy. His complaint asserts that the grooming policy and procedures violate his rights to free exercise of his religious beliefs under the First and Fourteenth Amendments and RLUIPA and deny him equal protection under Fourteenth Amendment.[3] The defendants have filed a motion to dismiss and Shabazz has responded, making the matter ripe for disposition.

---

[1] See https://vadoc.virginia.gov/about/procedures/documents/800/864.1.pdf (last visited July 29, 2014).

[2] See Maxwell v. Clarke, No. 7:12cv00477, 2013 WL 2902833 at *2 (W.D. Va. 2013) ("In September 2010, the GPP was established specifically for offenders who are habitual violators of the grooming policy as a secure alternative permanent segregation. . . . Prisoners in the GPP housing unit have certain additional privileges not available to segregation prisoners, including recreation in the pod with other offenders, double-cell assignments, outside recreation, television and visitation.")

[3] One section of Shabazz' response to the motion to dismiss veers from the free exercise and equal protection issues raised in his complaint to argue that Article 1, Section 16 of Virginia's Constitution establishes Christianity as a state religion in violation of the Fourteenth Amendment to the United States Constitution. This section states, in pertinent part:
> That religion or the duty which we owe to our Creator, and the manner of discharging it, can be directed only by reason and conviction, not by force or violence; and, therefore, all men are equally entitled to the free exercise of religion, according to the dictates of conscience; and that it is the mutual duty of all to practice Christian forbearance, love, and charity towards each other. No man shall be compelled to frequent or support any religious worship, place, or ministry whatsoever, nor shall be enforced, restrained, molested, or burthened in his body or goods, nor

**II**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. See, e.g., Bell Atl. Corp. v. Twombly, 553 U.S. 544, 553-63 (2007). The court must grant the motion to dismiss if the complaint and attachments does not allege "enough facts to state a claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations omitted). In conducting its review, a court must construe the facts in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (internal quotations omitted).

**A.**

Neither a state nor its officers acting in their official capacities are persons subject to suit for monetary damages under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989). Similarly, neither of the defendants is subject to suit for monetary damages under RLUIPA, which does not authorize a private cause of action for money damages against state officials in their official or personal capacities. Sossamon v. Texas, __U.S.__, 131 S. Ct. 1651, 1660 (2011) (holding that state officials sued in their official capacities enjoy Eleventh Amendment immunity against RLUIPA claims for damages); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009) (holding that RLUIPA does not authorize claims for monetary damages

---

shall otherwise suffer on account of his religious opinions or belief; but all men shall be free to profess and by argument to maintain their opinions in matters of religion, and the same shall in nowise diminish, enlarge, or affect their civil capacities. And the General Assembly shall not prescribe any religious test whatever, or confer any peculiar privileges or advantages on any sect or denomination . . . .

Va. Const., Art. 1, § 16. Shabazz appears to be arguing that the VDOC grooming policy, as an enforcement of the state constitutional requirement to exercise "Christian forbearance," imposes Christian traditions of hair length on him. Shabazz misinterprets Section 16 of the Virginia Constitution. Shabazz offers no evidence that close shaves and short hair are universal Christian practices, that the defendants are pressuring him to espouse Christianity in any way or that they are granting peculiar privileges to one religion over any other.

against state officials in their individual capacities).[4]  Consequently, the court will grant the defendants' motion to dismiss as to all of Shabazz's RLUIPA claims for monetary relief.

The Eleventh Amendment does not bar Shabazz' claims for injunctive relief or his constitutional claims for monetary relief against the defendants in their individual capacities. Lovelace v. Lee, 472 F.3d 174, 193-94, 202 (4th Cir. 2006).  These claims, however, must be dismissed because they are without merit.

B.

The First Amendment and RLUIPA protect an inmate's right to the free exercise of religion.  U.S. Const. amend. I; 42 U.S.C. § 2000cc-2(b).  To state a claim that prison officials or regulations have violated his free exercise right under the Constitution or RLUIPA, an inmate plaintiff must prove that he holds a sincere religious belief and that the official action or regulation substantially burdened his exercise of that belief.  Lovelace v. Lee, 472 F.3d 174, 185-87 (4th Cir. 2006); Hernandez v. Comm'r, 490 U.S. 680, 699 (1989).  Even a prison policy that substantially burdens an inmate's ability to practice his religious beliefs nevertheless withstands a First Amendment challenge when it is reasonably related to furtherance of a legitimate governmental or penal interest.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safley, 482 U.S. 78, 89-91 (1987).  To survive a RLUIPA challenge, a prison regulation must further a compelling penological interest by the least restrictive means.  42 U.S.C. § 2000cc-1(a). In either context, courts must afford "due deference to the experience and expertise of prison and jail administrators."  See, e.g., Cutter v. Wilkinson, 544 U.S. 709, 723 (2005).

---

[4] Rendelman addressed only the under the Spending Clause facet of the statute, and neither the Fourth Circuit nor the United States Supreme Court has yet addressed the question of whether a RLUIPA claim for damages could arise under the Commerce Clause portion of the statute.  See Rendelman, 569 F.3d at 189.  Shabazz, however, fails to allege any facts suggesting that his grooming policy challenges present any actionable claim for damages under the Commerce Clause section of RLUIPA.

The VDOC's grooming policy requirement for inmates to cut their hair and beards to meet policy standards or live in segregated housing areas has repeatedly been upheld in the face of First Amendment and RLUIPA challenges. See, e.g., McRae v. Johnson, 261 F. App'x 554 (4th Cir. 2008); Ragland v. Angelone, 420 F.Supp.2d 507 (W.D. Va. 2006), affirmed, 193 F. App'x 218 (4th Cir. 2006), cert. denied, Ragland v. Powell, 549 U.S. 1306 (2007). The Court in McRae held that even assuming an inmate established that being unable to grow his beard was a substantial burden on his sincere religious practice, prison officials had demonstrated that the beard length restrictions and segregation option furthered compelling state interests "in maintaining discipline and security among the inmate population, maintaining the health and safety of inmates and staff, and preventing prisoners from quickly changing their appearance constitute compelling governmental interests" and did so by the least restrictive means. 261 F. App'x at 558-59.

Shabazz asserts that the existence of the GPP pod somehow undermines the validity of these established findings regarding the lawfulness of the VDOC grooming policy. His argument is that if GPP inmates can grow their beards, then forbidding general population inmates to do so violates RLUIPA and the Constitution. The court cannot agree. The courts have ruled that prison officials do not violate the Constitution or RLUIPA by offering inmates the option of complying with their religious beliefs in segregation or complying with the grooming policy in the general population. Officials now offer a third option: to apply for housing in a particular segregation unit where inmates may comply with their religious beliefs to leave their beards uncut while enjoying some additional privileges. This third option does not diminish in the slightest the compelling nature of the interests in maintaining inmate and staff discipline, security, health, and safety that are furthered by the segregation of full-bearded

inmates.  Shabazz offers no evidence to disprove these justifications for the grooming restrictions and puts forward no less restrictive means than segregated confinement to further equally the policy's legitimate interests.

C.

To succeed in his equal protection challenge to the grooming policy, Shabazz

> "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny."

Veney v. Wyche, 293 F.3d 726, 730-31 (4th Cir. 2002) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)).  In a prison context, this level of scrutiny is "whether the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" Veney, 293 F.3d at 732 (quoting Shaw v. Murphy, 532 U.S. 223, 225 (2001)).

Shabazz' allegations provide no basis on which to find an equal protection violation. Shabazz vaguely complains that in the general population at Keen Mountain, he cannot grow his beard, while inmates in the GPP pod are allowed to do so, while enjoying the same privileges. Shabazz admits that he has not applied to enter the GPP and does not intend to do so.  Thus, he fails to demonstrate that he is similarly situated to the inmates in that unit who have agreed to remain in segregated confinement at a high-security institution like Wallens Ridge in order to continue complying with their religious beliefs.  Veney, 293 F.3d at 730-31.  Shabazz also states no facts suggesting that the difference in treatment of GPP residents and general population inmates under the grooming policy is either based on purposeful discrimination or not reasonably related to legitimate penological interests.  Id. at 730-32.

## III

For the reasons stated, the court grants the motion to dismiss as all of Shabazz' claims. An appropriate order will issue this day. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and counsel of record for the defendants.

Entered: July 31, 2014

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge